BURKS, J.,
delivered the opinion of the court.
It is essential to the success of the appellants in this cause, that they shall show themselves to be purchasers for value of the land in controversy, or of some estate, or interest in it. They do not pretend that they ever paid or contracted to pay any money or other thing of value for it. It was the separate property of Mrs. Mahala Ashby, and she, in contemplation of marriage with the appellee William H. Triplett, settled it to the use of herself and her intended husband and his children by a former marriage. The appellant Granville Triplett and the female appellants are these children, and their claim is, that the marriage, contemplated having taken place is a sufficient consideration to support the settlement to their use against a creditor of Mrs. Ashby, whose debt existed at and before the date of the settlement and though not a specific lien was then chargeable in equity upon the property settled.
That marriage is a consideration deemed valuable in law is an elementary principle, and. in ante-nuptial settlements untainted with fraud, that this consideration is sufficient to sustain against existing creditors of the settler, limitations of estates to the husband and wife and issue of the marriage, is well settled. “In marriage contracts,” says Lord Cottenham in Hill v. Gomme, 5 Myl. & Cr. 254, “the children of the marriage are not only objects of, but quasi parties to it”; *and it has been held by this court, that the consideration extends to children born out of wedlock, who are legitimated by the subsequent marriage of the parents and recognition. Herring & als. v. Wickham & wife & als., 29 Gratt. 628; Coutts & als. v. Greenhow, 2 Munf. 363.
Whether the consideration extends to estates limited to collateral relatives is a question upon which there have been and still seem, to be much diversity of opinion and conflict in the decisions. Adjudged cases both ways are numerous. We do not propose to review them. Many of them are referred to in the elementary works which we have examined and the principles deduced by the authors are there given. See 2 Lomax Dig. 335, 336 (side pages); Fry on Specific Performance §§ 108, 109, 110, 111; Kerr on Fraud and Mistake 204, 232; Sugden V. & P. (8th Amer. ed.) ch. 22, § 1, 463 (top), 716 (bottom), note 1; Schonler’s Dom. Rel. 264; Bump, on Fraud. Convey. (2d ed.) , 292, 293; and cases cited by these authors.
In reference to the cases generally, it is to be observed that while some of them are adjudications upon the relative rights and interests of creditors and purchasers on the one side and parties claiming under settlements on the other, yet by far the greater number seem to be cases of suits for the specific performance of articles among claimants under the articles, in which the rights of creditors were not drawn in question.
Speaking of the last-named class more particularly, Mr. Justice Nelson, in Neves v. Scott & als., 9 How. (U. S. R.) 209, after adverting to. the absence of uniformity and consistency in the decisions, says, “The result of all the cases, I think, will show, that if, from the circumstances under which the marriage articles were entered into by the parties, or as collected from the *face of the instrument itself, it appears to have been intended that the collateral relatives, in a given event, should take the estate, and a proper limitation to that effect is contained in them, a court of equity will enforce the trust for their benefit. They will not be regarded as volunteers outside of the deed, but as coming fairly within the influence of the consideration upon which it is founded; the'consideration will extend through all the limitations for the benefit of the remotest persons provided for consistent with the law.”
Without meaning to express any opinion as to the rule ithus laid down when applied to suits among family relations for .the specific execution of marriage articles, yet, if admitted to be correct, there is a distinction to be taken, we think, when the rights of creditors are involved. This distinction was noticed and remarked upon by Lord Hard-wicke in the leading case of Goring v. Nash & als., 3 Atkyns 136, 188, (side pages). “The strict measure,” says the lord chancellor, “which governs the court in a question between persons who come to carry articles into execution and purchasers, is not the rule of this court; for, between families, the court have considered, whether it would be attended with hardships or not, or whether a superior or inferior equity arises on the part of the person who comes for a specific performance, and this was the ground Lord Cowper went *561 upon in the case of Pinch versus Cord Win-chelsea, 1 P. Wms. 377. Lord Harcourt had decreed the agreement between the Countess of Winchelsea, and the late Earl; and Lord Harcourt's decree was affirmed in the House of Lords. The Earl of Winchelsea, after the agreement, confessed a judgment for 'just debts. When Lord Cowper had the seals a second time, another bill was brought by judgment creditors, to be satisfied out of the estate. He decreed for the judgment creditors; for, though it was *a sufficient agreement to bind the several branches of the family, yet not adequate to bind creditors. 1 mention this to show that the distinction has been already taken, and that it is one consideration how far the court will support agreements of this kind against relations in a family, and against purchasers and creditors.” See Reeves v. Reeves, 9 Mad. R. 133, 133, (side pages); Johnson v. Legard, 1 Turner & Russell 381, 293; Pulvertoft v. Pulvertoft, 18 Ves. R. 84, 89; Davemport v. Bishop, 19 English Ch. Rep. (1 Phillips) 697, 704; Osgood v. Strode, 2 Peere Williams 245, 255; Staplehill and wife v. Bully, Finch’s Precedents 234; Ball v. Burnford, Id. 113; 3 Spence’s Eq. 290-293.
The decision of Vice-Chancellor Malins made in 1867 in Smith v. Cherrill, L. R. 4 Eq. 389, would seem to be sound and satisfactory. A lady (Prances Anne Smith) being indebted to the plaintiff at the time of marriage, settled all her real and personal property (with the exception of jewels and furniture exceeding in value the amount of her debt), upon failure of issue of the marriage, in favor of certain collateral relatives, including a niece whom she had adopted as her daughter. The lady survived her husband, and died without issue, leaving no assets. The question was, whether the settlement was valid as against creditors of the settler under 13 Eliz., ch 5. Held, that the settlement, so far as it was made in favor of collaterals, was voluntary, and should be set aside to the extent of the plaintiff’s debt.
In delivering judgment, the vice-chancellor said — “I have always understood, and still understand, the law as it was settled.by the case of Johnson v. Legard, 6 M. & S. 60, and by the same case as decided by Lord Eldon (1 Turner & Russell, 281). and by many other cases, to be this; that when a marriage settlement goes beyond the immediate objects of the marriage,*and (as in this case) there are provisions for collateral relatives from whom no valuable consideration moves, then quoad those objects, the settlement has nothing to do with the marriage, but is to be considered as a settlement purely for the purpose of providing for those relatives. If, therefore, this settlement had been executed, only containing a provision for the collateral relatives of Frances Anne Smith, that would have been strictly voluntary, and being without consideration, absolutely void as against creditors whom it defeated and delayed. * * * * This settlement, so far as the ultimate limitations go, is not for value, but purely voluntary.”
The result of the decisions of this court thus far, is, that the consideration of marriage (merely) operates under the settlement, free from fraud, to confer on the husband and wife and issue of the marriage, and on children base born but legitimated by subsequent marriage of the parents and recognition, rights in the property limited to them paramount to those of existing creditors of the settler although embarrassed with debt. This would seem to be going quite far enough, and the manifest injustice done to creditors by the established rules drew from Judge Staples in Herring & als. v. Wickham & als., supra, the remark, that “the whole subject needs the attention of the legislative department.” We are now asked to go further and hold, that the consideration extends to persons who are not even collateral' relatives but total strangers in blood to the settler, and that such persons are purchasers for value with rights paramount to those of pre-existing creditors. We are not at all disposed to take a single step further in that direction. The mischief and gross injustice which would result from extending the rule,, as we are asked to do, is strikingly exemplified by the case in judgment.
*A married woman, the owner of a* separate personal estate over which' she had full power, having contracted for the purchase of land to be settled to her separate use, to enable her to complete the purchase, applied to her brother for aid. He advanced to her at different times, at her request, on the credit of her separate property, several sums of money of considerable amounts, for which he took her bonds, the money borrowed to be used and applied in the navment of the purchase money for the land, and the money advanced was so applied. He generously indulged her for many years — until the death of her husband and for years afterwards. She at length contracted a second marriage, and, in contemplation of such marriage and for no other consideration, conveyed the whole of her estate, including the land aforesaid, to the use of herself and her intended husband and the children of the latter by a former marriage, without making any provisions whatever for the payment of the debts due to her brother or any other debts, if any others she owed. The bill in this case was filed by the brother, twelve months after the second marriage, to recover the debts due him out of the settled estate. And even after bringing his bill, he seemed not disposed to press his claim. For, although an account of his debts was ordered in the early stages ol the suit, the order was not executed until sometime after his sister’s death.
Now, under these circumstances, who has the better right in respect to the land in question — the children of the husband by a former marriage who paid nothing for it, oi the indulgent brother whose debt unpaid was for money lent to his sister to pay for the land and which confessedly was used by her for that purpose? We do not hesitatq to say, that these children must be considered and treated as volunteers, at least as respects *the creditor Romine, and *562 that their interest, whatever it be, under the deed of settlement, which is a very obscure and ambiguous instrument, is subordinate to the superior right of the creditor to resort to the land for the payment of his debt. Code of 1873, ch. 114, § 3.
This conclusion upon the view taken, makes is unnecessary to consider the doctrine of lis pendens on which the decree of the learned judge' in the court below seems to have been founded. If the decree is right, as we think it is, in subjecting the land to the complainant’s debt, it is not material here what reasons the judge below gave for it.
One question remains' — whether the circuit court erred in not making the appellants, on their petition, parties to the suit. We think they ought to have been made parties. In any view of the case, they had an interest in the subject-matter in controversy. Although the deed may have been void as to the creditor (Romine) either, as the judge below thought, because it was not recorded until after the commencement of the suit and the docketing of the lis pendens, or, as this court thinks, without regard to the lis pendens, because the appellants are not purchasers for value but volunteers, still the deed is good between the parties, and the appellants have an interest in the property conveyed after the creditor' complaining has been satisfied. But it is manifest from the record, that the appellants have not been prejudiced by not being made parties in a formal manner. They set up their claim in their petition, and Romine’s administrator filed his answer to it, and upon this petition, answer, and the depositions taken, their pretensions were fully presented, investigated, and passed upon. Moreover, they never filed their, petition until after the lapse of eight years from the institution of the suit, and more than a year after the *commissioner had, as ordered, taken and reported the account of Romine’s debt. The matters involved in that account seem to have been thoroughly sifted and investigated. The parties then defendants — Triplett (the surviving husband), Mrs. Triplett’s administrator and her heirs — were represented by counsel, the.same counsel, it would seem, who subsequently represented the appellants on their petition. Under these circumstances, it cannot be doubted that the report of the commissioner, with the exceptions thereto by the defendants, presented the case fairly and fully to the court for decision; and even if the petitioners had been formally made parties, they would not have been allowed, if they had asked for it, after such long delay and laches on their part, to have the commissioner’s report recommitted. - Besides,^ in their petition they do not appear to question Romine’s debt, make no allusion or objection to the statement of it as presented by the commissioner’s report, but the chief object seems to have been to present for decision the question of the liability of the estate for the debt as against their claim under the deed of settlement.
The fact is, the petition was never rejected by the court, but the cause was heard upon it, together with the other papers referred to in the decree, and when the cause goes back they may yet be fully and formally made parties, if they desire it, though the step would seem to be of little practical importance if Romine’s debt exceeds in amount the value of the whole land in controversy, as the commissioner’s report indicates.
Upon the whole case, the court is of opinion that there is no error, to the prejudice of the appellants, in the decree appealed from, and that it should be affirmed.
Decree affirmed.